June 20th, 1906.

————o————

No. 3932.

(Court of Appeal, Parish of Orleans.)

## W. J. GAYLE & CO., vs. MRS. SARAH E. ATKINS.

1. When the lessee has duly notified the lessor of the necessity of making repairs to the roof of the premises, and the latter, whenever so notified promptly undertook to make said repairs, it will not avail the lessor as a defense, to urge that the lessee, who has suffered a loss, should have caused the repairs to be made, and deduct the cost of same from the rent.

2. "The lessees were under no obligation to make them, as the lessor had undertaken to repair the roof fully herself, and did repair them to the extent she deemed to be a compliance with her obligations. The lessess, under the circumstances, were not called upon to know the condition of the roof."

3. The lessor having received the rent regularly from the plaintiffs and heeded their demand for repairs without questioning their right to ask for them, she cannot now challenge their right to assert their claim for damages alleged to have been caused by the improper execution of the repairs.

4. The issues of fact involved herein, are resolved in favor of plaintiff not, however, on the credibility of the witnesses, but upon the appreciation of their testimony.

Appeal from Civil District Court, Division "E."

Stafford, Lambert & Robinson, for Plaintiff and Appellee.

W. F. Brewer, for Defendant and Appellant.

ESTOPINAL, J.   Plaintiffs who are engaged in the business of haberdashers and occupied for this purpose the premises No. 805 Canal Street, belonging to defendant, sued to recover two hundred and twelve dollars and sixty-four cents ($212.64), averring substantially, that they had repeatedly called upon defendant's agent in this city, one John C. Levy, notifying him of the defective condition of the roof on a portion of the building

513

and the urgent necessity for repairing same; that the repairs were made by defendant when notified, but they were deficient, and in consequence of a heavy rainfall on the 17th day of March, 1904, the said roof leaked causing damage and loss to plaintiff in the sum aforementioned.

Defendant first interposed an exception of no cause of action, which was referred to the merits.

Defendant in her answer denies that the plaintiffs are the lessees of the property, the lease being to Burnett & Gayle, and was never transferred to plaintiffs. She avers that upon request for repairs of said premises, they were promptly made, and that if any damage was suffered on the 17th of March, 1904, that it was due to the unprecedented storm which prevailed on that day which caused the leak in the roof in which there was at the time no defect.

There was judgment below for the defendant, and plaintiff appeals. The exception of no cause of action is without force.

The first ground urged that the plaintiffs are not the lessees of her property and cannot stand in judgment is not supported by the record, which shows that they have been all along recognized as such. Defendant or her agent was aware that plaintiffs had succeeded Burnett & Gayle in the business conducted in this building, and received the rent from them. A yet stronger recognition of the relation of land lord and tenant between the parties to this suit is evidenced by the fact that plaintiffs complained of the bad condition of the roof at various times, and defendant, heeding these complaints, made severeal efforts to remedy the trouble. Defendant, under these circumstances, cannot now make the question of the lease an issue. This defense is without merit and could not have been urged seriously. The is without merit and could not have been urged seriously. The further ground urged for the maintenance of the exception, to-wit:

"That if repairs were needed to said premises, and defendant failed to make them when notified thereof, it was then the duty of plaintiff's to have same made, and not having done so, they are estopped from claiming damages arising from the difficulty in said premises, "though conceded to be a correct statement of

the law, can have no applicaton in the face of the facts presented in the case at bar.

Certainly, had the defendant, when notified, failed to make the needed repairs, it was the duty in that case of the lessees to cause them to be made and deduct from the rent the price due. (C. C. 2694), but the proof is that the defendant, whenever notified by plaintiffs of the defective conditon of the roof, was always prompt in having the same repaired, and though it is apparent that these repairs were either insufficient or unskillfully done, the fact remains that the condition provided for under the Code, making it the duty of the lessees to undertake the repairs, was never at any tme permitted to occur. The lessor must have refused or failed to make the necessary repairs.

In Schoppel vs. Daly 112 La., p. 201 a case directly in point with the one at bar, the Court said:

"They were under no obligation to make them, as the lessor had undertaken to repair them fully herself, and did repair them to the extent which she deemed to be a compliance with her obligations. Her workmen raised the building, and inspected its sills and joists and flooring from below. That inspection revealed to her the exact sitation, and when the workmen left it was an assurance to the lessees that everything was in order. The lessor was not called upon to know, under the circumstances, what the condition of the sills and joists covered by the flooring was, nor the condition of the flooring. It appears as a fact that the repairs made were not such as to place the flooring in a safe condition."

For these reasons we conclude that the ground urged in support of the exceptions, are without merit.

## ON THE MERITS.

Though it is alleged in the pleadings, as a defense, that the leak in the roof which caused the damage to plaintiff's goods was caused by the heavy and unprecedented storm which occurred on March 17th, 1904, the burden of the testimony elicited for the defense shows an attempt to prove that the leaky condition of the roof was due to improper use to which said roof

515

was put by plantiff or his sub-tenants, who permitted powerful acids to flow and drain on said roof.

The main witnesses produced by the defendant to show the existence of these conditions are one Charles Holzer, a sheet metal worker and contractor, and P. O. Leutenbacher, also a sheet metal worker, in the employ of Holzer. This reading of the testimony given by these two witnesses impress us with its utter uncertainty as to facts testified to. Holzer, when asked whether he could account for the cause of the leak in the roof said "he *supposed* it was caused by acid and also by the wear and tear of walking outside, and placing of boxes of stuff and cinders, and a little further on in his testimony, this witness states in reply to question:

"Yes, sir; we made some before (referring to March 17th), as I said before. We repaired the roof and put a lot of patches in it, and one thing and another, there was a lot of holes caused by hatchet chopping."

This witness, we find, attributes the leaks in the roof to acids, boxes filled with ashes, wear and tear caused by walking, and hatchet chopping. On cross-examination, however, when questioned about repairs the witness says:

Q. You do not know whether it was November, March or January?

A. March, I suppose—March. He notified me to fix the roof, and I sent my man to go and repair it.

Q. You did not go yourself?

A. No, sir; I did not.

Q. All this then, about cinders and all that—that was told to you, that it existed there?

A. No, sir; *I believe* I went there also, after Mr. Lutenbacher told me of the condition of the roof; I went there myself after that to make sure of it."

Further on witness admits that there was not much iron roof there; that most of it was glass, and the whole leak was caused by overflow, also, that the accumulation of hail eight or ten inches high on the roof, clogged the pipes and caused the over-flow which caused all the damage.

The statements of Holzer are made in a general and uncertain way, and are not of the character which would justify a Court in predicating upon them a determination of the issues, and this appreciation of the witness's testimony by us is fortified by the fact that other witnesses testify in such manner as to make very improbable the *theory of corrosion by acid* advanced by witness Holzer.

The testimony of Holzer and Leutenbacher beyond showing that repeated repairs were made to this roof by them, proves nothing.

Dr. West, tenant of plaintiff, a dentist, occupying an office on the upper floor, states that he occupied a front office, made use of acids, but that the acid, when thrown away, is very weak and useless, and could not have rusted or damaged the roof, but, says the Doctor: "I did not use the discharge pipe in the rear office which empties on the roof in question, but threw it in my pipe which discharges in the front." The value of the Doctor's statement relative to the harmless condition of the acid which he threw away is shown by the unrefuted statement which he makes that "it (the acid), is thrown out in the washstand, and that goes in that iron pipe that has been there since 1898, when I went in the building, *and there is no hole in that pipe.*"

Holzer, we have seen, testified to the damage done by a large box containing cinders which was put out on the roof. Dr. West says: "Mr. Holzer called my attention to the fact that they had done no damage; he moved the box and showed *where no damage was done.*"

It is neither established that acids were permitted to run down on the roof, nor that the leaky condition was caused by the effect of acids. Even though there had not been a syllable uttered showing acids had been thrown on the roof, the opinion of Holzer and Leutenbacher, the sheet iron workers, whose testimony, standing without corroboration, would not constitute that positive proof required. The burden was on the defendant, she has not met it.

It is shown by defendant's agent himself, that the roof had always given trouble and had leaked before as well as after March 17th, 1904, the day of the storm.

It is in evidence that a new roof was put on after the storm of March 17th, but this did not prevent the leak. In answer to a question by the Court Levy, (defendant's agent), says:

By the Court:

Q. "Have there been any complaints about the roof, since you have had the new roof put on?"

A. "Not until the other day, when the heavy downpour took place, Mr. Gayle made complaint then." Here we have a new roof, which, it is not pretended, was injured by acids or any improper use whatsoever, leaking after a heavvy downpour.

It is clear that the trouble in this roof was due to improper construction or some defect or vice which defendant neglected to correct, thereby making herself liable for the loss suffered by her lessees.

Plaintiffs filed a detailed list of the goods damaged and their value. We are satisfied that ample and sufficient proof of the loss has been made.

It is urged by defendant that certain articles as damaged, viz, umbrellas and bathing suits, could not be damaged by water, since these articles are made for use in water. We cannot go the length defendant does. The articles may be used, it is true, though damaged, but it is well known and recognized that even a rain-coat if it becomes wet while in stock will loose its commercial value and can only be sold as damaged goods at a greatly reduced price.

For the reasons assigned it is therefore ordered, adjudged and decreed that the judgment appealed from be, and the same is hereby avoided, reversed and set aside, and it is now ordered, adjudged and decreed that W. J. Gayle and Company have judgment against the defendant, Mrs. Sarah E. Atkins, in the sum of two hundred and twelve dollars and sixty-four cents ($212.64) with legal interest from judicial demand. Defendant to pay costs of both Courts.

DUFOUR, J. Dissents and files an opinion.

June 22, 1906.

## DISSENTING OPINION.

DUFOUR, J. The plaintiffs, occupants of a building be-

518

longing to defendant, sue the latter for damages to a portion of their stock of goods therein contained caused by a general rainstorm that came over the City on March 17th, 1904.

They had previously notified the lessor to repair the roof, which she did, and claim that the leaks occurred because of poor workmanship or an inferior quality of material used in the repairing.

The defences are:

First—That the plaintiffs are without authority to stand in judgment because they are are not the lessees of defendant who had leased the property to other parties with a prohibition against sub-leasing without the consent of the lessor and such consent was never obtained.

Second—That the damage was due to the unprecedented storm, was unforseen and not due to any defect in the roof of said premises.

The first defense is without merit, the defendant received the rent regularly from the plaintiffs and heeded their demand for repairs without questioning their right ao ask for them. She cannot, therefore, at this late day, challenge their right to assert their claim for damages alleged to have been caused by the improper execution of the repairs. It is shown that the storm was a heavy one, that the roof leaked and that damage resulted; the question is as to the cause of such damage. The testimony of plaintiff's witnesses generally stated, is to the effect that the workmanship and materials were not proper and that notwithstanding "the repairs, the roof remained in a defective condition. The only vice specially mentioned is that the exhaust pipe of the roof was not large enough and must have become congested owing to the heavy downpour of rain.

The roof in question is a corrugated iron one over a shed in the yard, which on one side, had a gutter leading to a waste pipe emptying into a drain below ground, and, on the other, re-received a waste pipe from the upper story of the house occupied by sub-lessees of the plaintiffs.

Among the reasons given by defendant's witnesses for the occurrence, are the statements that the roof was partly rotted by

acids coming through the waste pipes from the offices of a dentist and a physician who were the plaintiff's tenants, that cinders and other stuff had been allowed to remain on the roof and that the holes in it are due to chopping with a hatchet.

It is also said that the life of a corrugated iron roof is not less than eight years under normal conditions.

The conclusions of these witnesses is that the leaks were caused by obstructions due to plaintiff's negligence and to the hail which clogged the escape pipe.

Whether we view this case as resting on the credibility of witnesses or the appreciation of their testimony, my examination of the record has not suggested sufficient cause to disturb the findings of fact of our brother of the District Court, which led to a rejection of plaintiff's demand.

I therefore dissent.

June 22, 1906.

Rehearing refused June 29, 1906.